# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 12-CV-00344 (JFB)

————————————

MICHAEL DELL'AERA,

Petitioner,

VERSUS

RANDY JAMES,

Respondent.

————————————

**MEMORANDUM AND ORDER**

December 20, 2012

————————————

JOSEPH F. BIANCO, District Judge:

Michael Dell'Aera ("petitioner" or "Dell'Aera") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction entered on April 14, 2010, in County Court of Nassau County, for robbery in the second degree (N.Y. Penal Law § 160.10(1)), robbery in the third degree (N.Y. Penal Law § 160.05), and petit larceny (N.Y. Penal Law § 155.25). Petitioner was sentenced to a determinate sentence of imprisonment of three and one-half years on the charge of robbery in the second degree, an indeterminate term of imprisonment with a minimum of one year and a maximum of three years on the charge of robbery in the third degree, and a sentence of imprisonment of one year on the charge of petit larceny, all to run concurrently.

Petitioner challenges his conviction on the following grounds: (1) the trial court gave an erroneous jury charge regarding intent which changed the prosecution's theory of the case, and (2) the trial court erroneously answered a jury question on the issue of the burden of proof.

For the reasons set forth below, the Court finds that petitioner has not demonstrated any basis for habeas relief, and therefore denies the petition on the merits.

## I. BACKGROUND

### A. Facts

The following facts were adduced from the petition and the documents attached thereto, as well as from the state court trial and appellate records.

### 1. The Events of June 26, 2008

On June 26, 2008, at approximately 1:00 p.m., Kwan Lee ("Lee"), the owner of Lee Jewelers, was working alone in his jewelry store when he observed petitioner on the surveillance camera. (Pet'r's Trial Transcript ("Tr.") 55, 58.) Lee saw petitioner enter by himself through the store's outer door. (*Id.* at 55.) Recognizing petitioner from a previous transaction, Lee admitted petitioner into Lee Jewelers by buzzing open the store's inner door. (*Id.*) As petitioner entered the store, a masked individual followed close behind, holding a gun to petitioner's head. (*Id.* at 55, 87-88.) Upon entering the store, the masked individual pushed petitioner onto some potted plants. (*Id.* at 89, 106, 123.) The masked individual then jumped onto the store counter, pointed his gun at Lee, and demanded money. (*Id.* at 89, 76, 88.) Lee opened the cash register, and the masked individual took money and then subsequently fled the scene. (*Id.* at 56, 76, 88.) Petitioner did not identify the masked individual to Lee at the time, nor did he indicate that he knew the individual. (*Id.* at 107.)

Petitioner remained in the store while Lee called 911. (*Id.* at 56.) Because Lee did not speak English well, petitioner assisted Lee by relaying the details of the robbery to the 911 operator. (*Id.* at 64.) Petitioner also provided a written statement of his recollection of the robbery to the police when they arrived. (*Id.* at 103.) Petitioner claimed that the sole reason he went to Lee Jewelers that day was to sell a gold bracelet. (Pet'r's Mem. of Law in Supp. of Pet. for Habeas Corpus ("Pet'r's Mem.") at 18.)[1]

Detective Manuel Nash ("Detective Nash") responded to the scene of the crime. (Tr. 128-29.) He viewed the robbery on a video taken by the store's surveillance system, and noticed that petitioner had kicked open the door to help the robber enter the store. (*Id.* at 129, 139.) Detective Nash brought petitioner to the Robbery Squad headquarters and showed him the surveillance video. (*Id.*) Detective Nash confronted petitioner with the inconsistencies between his first statement given to the police and the surveillance video, to which petitioner responded by continuing to deny any knowledge of the robbery or the robber's identity. (*Id.* at 129, 135.) Upon continued examination, petitioner gave a second statement to the police, in which he admitted to both knowing the identity of the robber and having a relationship with him prior to and leading up to the incident. (*Id.* at 142.)

### 2. Petitioner's Police Statement

In petitioner's final statement, he admitted that the robber was his friend, Jamie Ramirez ("Ramirez"). (*Id.* at 156, 187.) He claimed, however, that his only involvement in the robbery was agreeing to sell a bracelet at Lee Jewelers on that day. (*Id.* at 159-60, 187.)[2] He claimed that he was completely unaware of Ramirez's intent to rob the store. (*Id.* at 159-60, 187-88.)

According to petitioner, after he and Ramirez arrived in the parking lot of Lee Jewelers, Ramirez told petitioner that he was going to Starbucks. (*Id.* at 188.) Petitioner states that as he approached the jewelry store, he noticed Ramirez walking behind

---

[1] After the robbery, Lee examined the bracelet that petitioner brought to the store that day, and found that the bracelet was not in fact made of gold.

Because it had no value, Lee did not purchase the bracelet from petitioner. (Tr. 62.)

[2] According to petitioner, Ramirez asked him to sell the gold bracelet because Ramirez did not have the necessary identification to sell the bracelet himself. (*Id.* at 159-60, 187.)

him, but merely assumed that Ramirez changed his mind about going to Starbucks. (*Id.* at 188.)  Petitioner claims that he kicked the door open for Ramirez, but that he was surprised and frozen in disbelief when Ramirez subsequently grabbed him from behind with a gun. (*Id.* at 159, 188-89.)

When the police arrived at the scene of the crime, petitioner received a phone call from Ramirez. (*Id.* at 189.) Petitioner picked up his cellular phone and said, "You're an a\*\*hole," and hung up. (*Id.*) Petitioner claims that he did not initially reveal Ramirez's identity because he did not want to be known as a "rat" or get Ramirez in trouble.  (*Id.* at 156, 189-90.)

### 3.  Ramirez's Testimony

Later that day, the police arrested Ramirez on the basis of information provided by petitioner. (*Id.* at 192.)  Ramirez eventually admitted that he and petitioner had agreed to rob Lee Jewelers together. (*Id.* at 235.)  Ramirez agreed to cooperate with the Nassau County District Attorney, and to give truthful testimony in exchange for a lesser plea. Accordingly, Ramirez testified at petitioner's trial.

Ramirez claimed that the plan was for petitioner to pose as an innocent customer, while Ramirez acted as a gunman demanding money. (*Id.* at 236-37.)  Ramirez testified that, on June 26, 2009, petitioner called him at approximately 11:30 a.m. to "hang out." (*Id.* at 233.) Shortly thereafter, petitioner arrived at Ramirez's house and they drove to the parking lot of a bowling alley to smoke marijuana and snort heroin. (*Id.* at 233-35.) After about ten minutes, Ramirez and petitioner went to Ramirez's house to watch television and eat.  (*Id.* at 235.)  After the high wore off, the two wanted more heroin, but did not have the money to purchase it. (*Id.* at 236.)

According to Ramirez, petitioner devised a plan to rob Lee Jewelers and, after some hesitation, Ramirez agreed. (*Id.* at 235.) Ramirez proceeded to change his clothes and to retrieve his brother's BB gun. (*Id.* at 235-36.)  He also used a black napkin to fashion a face-covering mask. (*Id.* at 236.)

Ramirez and petitioner then drove in petitioner's car to Lee Jewelers. (*Id.* at 238.) Ramirez tied the napkin around his face during the car ride. (*Id.* at 240.) Ramirez and petitioner walked to the jewelry store, and Ramirez crouched behind petitioner so that he would not be seen on the surveillance camera. (*Id.* at 236, 239, 243, 255.) When Lee buzzed open the store's inner door, petitioner kicked it open for Ramirez.  (*Id.* at 255, 259.) Ramirez jumped up behind petitioner, put the BB gun to petitioner's head, (*id.* at 240), and put petitioner in a headlock to make the robbery look as genuine as possible, (*id.* at 257.) Upon entering, Ramirez jumped up on the store counter, took money from the cash register, and ran out of the store. (*Id.* at 240-41, 256.)

Ramirez testified that, pursuant to their plan, he fled to a Checkers restaurant near Lee Jewelers. (*Id.* at 242.) Approximately ten to fifteen minutes later, Ramirez telephoned petitioner from a pay phone. (*Id.*) Petitioner picked Ramirez up and told him that it did not look good, and that they should reconvene later at Ramirez's home. (*Id.*)

### B. Procedural History

#### 1.  State Court Proceedings

#### a. Trial and Sentencing

Petitioner was indicted for robbery in the second degree (N.Y. Penal Law § 160.10(1)), robbery in the third degree (N.Y. Penal Law § 160.05), and petit

larceny (N.Y. Penal Law § 155.25). On April 14, 2010, a judgment was entered, following a jury trial, finding petitioner guilty of robbery in the second degree, robbery in the third degree, and petit larceny. (Tr. 505-06.)[3] Petitioner was sentenced to a determinate sentence of imprisonment of three and one-half years and five years' post-release supervision on the charge of robbery in the second degree, an indeterminate term of imprisonment with a minimum of one year and a maximum of three years on the charge of robbery in the third degree, and a sentence of imprisonment of one year on the charge of petit larceny, all to run concurrently. (Sentencing Transcript ("S.") at 10-11.) Defendant was also ordered to pay a $300 surcharge, a $25 crime victim assistance fee, and a $50 DNA fee. (*Id.* at 11.)

### b. Direct Appeal

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department, on the following grounds: (1) the trial court's intent charge changed the prosecution's theory of the case; and (2) the trial court's charge regarding reasonable doubt included an incorrect description of the People's burden of proof, and thus deprived defendant of his right to be convicted on proof beyond a reasonable doubt. (Def.-Appellant's Appeal Br. at 26-28.)

On May 17, 2011, the Appellate Division affirmed the conviction. *People v. Dell'Aera*, 84 A.D.3d 1109 (N.Y. App. Div. 2011). The court held: (1) the petitioner's challenge to the County Court's jury charge regarding intent was without merit and did

not alter the People's theory as presented in the indictment or the facts as presented at trial, and (2) the petitioner's challenge to the adequacy of the County Court's response to a jury note requesting clarification of the concept of reasonable doubt was unpreserved for appellate review, and in any event, was without merit. *Id.* at 1110.

Petitioner then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's decision. Petitioner's application raised the same claims as those raised before the Appellate Division. The New York Court of Appeals denied petitioner's application for leave to appeal on September 27, 2011. *People v Dell'Aera*, 17 N.Y.3d 858 (2011).

### 2. The Instant Petition

Petitioner filed the instant habeas corpus petition on January 24, 2012. Respondent's memorandum of law in opposition was filed on May 2, 2012. Petitioner filed a reply on May 21, 2012. The Court has fully considered the arguments and submissions of the parties.

### II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

---

[3] Prior to trial, the court held a *Huntley* hearing. However, because the petitioner does not challenge any aspect of the *Huntley* hearing, the Court has not summarized the hearing testimony here.

court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal rule from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

For the reasons set forth below, the Court denies the relief sought by petitioner on the merits.

### A. Jury Charge on Intent

Petitioner argues that the trial court erroneously instructed the jury on intent, and that the instruction changed the prosecution's theory of the case. (Pet'r's Mem. at 28-29.) Specifically, petitioner claims that the jury charge altered the prosecution's theory of the case – that he and Ramirez pre-planned the robbery together. (*Id.*) Petitioner further argues that, because petitioner's defense at trial was based solely on that prosecutorial theory, the jury charge regarding intent, which allegedly allowed the prosecution to proceed on an alternative theory – that petitioner was guilty for not impeding Ramirez or for not disclosing Ramirez's identity to the police – deprived him of the right to confront the evidence against him. (*Id.*) For the reasons set forth below, this contention is without merit.

On January 12, 2010, during the jury deliberations, petitioner's counsel asked the trial court for an additional charge regarding the elements of "intent" and "knowing." (Tr. 486.) Counsel asserted that the additional charge was necessary because in order to find petitioner guilty, the jury had to find that he intentionally and knowingly participated in the crime, but the crux of petitioner's defense was that he was present at the time of the robbery, but had no prior knowledge of the robbery or Ramirez's intent to rob the store. (*Id.*) The trial court subsequently gave the following charge to the jury:

> The crimes with which the [petitioner] is charged require that he has the intent to commit those crimes.
>
> Intend means conscious objective or purpose.
>
> Therefore, a person acts with intent to deprive another of property or to appropriate the property to himself or a third person when such – when such person's conscious objective or purpose is to withhold the property or cause it to be withheld permanently, to exercise control over the property or to aid a third person to exercise control over it permanently, or to dispose of the property either for the benefit of himself or a third person or under such circumstances as to render it unlikely that an owner will recover such property.
>
> Intent does not require premeditation. In other words, intent does not require advance planning. Nor is it necessary that the intent be

in a person's mind for any particular period of time.

> The intent can be formed and need only exist at the very moment the person engages in prohibited conduct or acts to cause the prohibited result and not at any earlier time.
>
> The question naturally arises as to how to determine whether or not a defendant had the intent for the commission of a crime. To make that determination in this case you must decide if the required intent can be inferred beyond a reasonable doubt from the proven facts. In doing so you may consider the person's conduct and all of the circumstances surrounding that conduct, including but not limited to the following:
>
> What, if anything, did the person do or say? What result, if any, followed the person's conduct? And was that result the natural, necessary, and probable consequence of that conduct?

(*Id.* at 492-94.)

Counsel for petitioner objected to the intent charge after it was read for the first time, stating that it would permit the jury to conclude that petitioner formed his intent to participate in the robbery once Ramirez began to rob the store at gunpoint. (*Id.* at 496-98.)[4] The court responded that the intent charge was taken from the Criminal Jury Instructions ("CJI"), and that "CJI isn't designed to fit anybody's theory . . . [but is]

---

[4] Counsel for petitioner further objected to the intent charge on the ground that it would permit the jury to find intent to participate in the robbery from petitioner's failure to intercede and from petitioner's concealment of Ramirez's identity from the police. (Tr. 497-98.)

designed to explain to the jury what intent means in a crime requiring intent." (*Id.* at 498.)

### 1. Legal Standard

Jury instructions violate due process if they "fail[] to give effect to [the] requirement" that the prosecution prove every element of the charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *Delvalle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

### 2. Application

The Court finds that the trial court's instruction on intent was not erroneous and that it certainly did not constitute a due process violation. Rather, the Court notes that the trial court's instruction was proper in all respects. The instruction was given at the behest of defense counsel and followed the pattern jury instruction for intent, which is an accurate statement of the law, stating that intent does not require premeditation, advanced planning, or a prolonged period of intent. *See, e.g., Tyler v. Conway*, No. 08-CV-6560(MAT), 2010 WL 5287513, at *7 (W.D.N.Y. Dec. 17, 2010) ("As the appellate court correctly pointed out, the trial court's instruction defining intent was

identical to the suggested instruction contained in New York's Pattern Criminal Jury Instructions."); *see also Campbell v. Fischer*, No. CV-04-3569 NG JMA, 2005 WL 2033465, at *7 (E.D.N.Y. June 30, 2005) ("Even though there is no official significance to the New York Criminal Jury Instructions, the trial court's instructions in many respects track quite closely the pattern instructions. The trial court gave a detailed definition of burden of proof, which was followed immediately by a recitation of the elements of each of the charged crimes. There is no constitutional infirmity to the instructions . . . ."). In short, the trial court judge did not misstate the law in any way by instructing the jury on intent as he did at trial.[5]

To the extent petitioner suggests that, even if the instruction was correct, it constituted an improper constructive amendment to the indictment, this argument is also without merit.[6] The Second Circuit has explained that,

> [t]o prevail on a constructive amendment claim, a defendant must demonstrate that

---

[5] Also, contrary to defense counsel's argument at trial, (*see* Tr. 497-98.), the trial court did not state that intent could be found simply based upon petitioner's failure to intercede or disclose Ramirez's identity to the police.

[6] As a threshold matter, some courts have concluded that claims of constructive amendment to an indictment do not present a federal constitutional question that is cognizable on habeas review. *See, e.g., Player v. Artus*, No. 06 CV 2764 (JG), 2007 WL 708793, at *7 (E.D.N.Y. March 6, 2007) ("[T]he Fifth Amendment's right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment, so does not work to limit state prosecutions . . . . Therefore, . . . [petitioner's] constructive amendment claim does not present a federal constitutional question." (citations omitted)). However, this Court assumes *arguendo*, for purposes of this habeas petition, that such a claim is cognizable, and finds that it fails on the merits for the reasons discussed *infra*.

"the terms of the indictment are in effect altered by the presentation of evidence and the jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."

*United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)). In the instant case, respondent points out that the indictment charged petitioner with second-degree robbery, and simply tracked the language of the statutory elements with no reference to a particular theory of intent.[7] Robbery in the second degree has no temporal restriction on the intent requirement, and neither the indictment nor the judge's charge suggested that the robbery was pre-conceived or that the aiding and abetting by petitioner occurred for any particular length of time. Thus, there is no possibility that the petitioner was convicted of "an offense other than that charged in the indictment." *Id.*

Similarly, the fact that the legal instruction allowed the jury to find intent based upon less premeditation than the prosecution argued during the course of the trial does not constitute an unconstitutional amendment to the indictment. Although arguing that the robbery plan was pre-conceived, the prosecution never disavowed the idea that intent could have been formed at the scene, and thus petitioner cannot

complain that he was unaware of this potential prosecutorial theory of the case when he formulated a defense. Petitioner's defense was that he never formed intent to assist in the robbery, and nothing in the instruction introduced a new theory of guilt inconsistent with that defense. Accordingly, there was no constructive amendment to the indictment under either federal or New York standards. *See, e.g., United States v. James*, 998 F.2d 74, 78 (2d Cir. 1993) (rejecting argument that a supplemental instruction violated due process where the instruction allowed the jury to convict defendant of aiding and abetting the bank robbery, even if the defendant did not know of the robbery until the escape phase after the robbery, the latter of which allegedly was inconsistent with government's argument to the jury that the defendant was a knowing participant from the outset of the robbery); *Player*, 2007 WL 708793, at *7 ("Notwithstanding the prosecutor's statement [that the prosecution's position was that the conspiracy was ongoing until the murder], made when the jury was not present, the theory of the prosecution at trial was entirely consistent in substance with the indictment. . . . Even if the prosecutor had offered proof of a conspiracy that did not extend beyond the death of Myer[,] . . . such a change in the state's case would have been a permissible narrowing of the indictment."); *see also United States v. Hunley*, 476 Fed. App'x 897, 900 (2d Cir. 2012) (holding that petitioner was not prejudiced by the fact that the trial court gave a joint possession jury instruction because "a joint possession theory of liability [did] not deviate from the indictment" and petitioner did not "identify any arguments he would have made, or defenses he would have asserted, had the government emphasized its theory of joint possession earlier in the trial").

In sum, after careful review, the Court concludes that the state court's decision with

---

[7] Although the indictment itself is not contained in the record, the count at issue is quoted verbatim in the respondent's Appellate Division brief, at page 29, as well as the respondent's brief in opposition to the habeas petition, at page 17, and petitioner does not dispute that the language of the indictment for the second-degree robbery count simply tracked the statutory elements without reference to a particular theory of intent.

respect to the intent instruction was not an unreasonable application of, nor contrary to, clearly established federal law. The Court also concludes that the state court's intent instruction was not based on an unreasonable determination of the facts in light of all of the evidence presented at trial.

### B. Response to January 13, 2010 Jury Question

On January 13, 2010, the trial court announced that it received a "rambling" jury note indicating that the jurors "seem a little confused." (Tr. 496.) Petitioner and respondent agree that the note stated the following:

> We, the jury, respectfully request your clarification.
>
> 1. Is it our charge as jurors to decide guilt based solely upon whether or not we believe that the prosecution has proven guilt "beyond a reasonable doubt" or are we expected to weigh the evidence using our judgment to determine guilt "beyond a reasonable doubt."
>
> 2. We are still unable to agree upon a verdict. Therefore we request to examine the transcript of your response yesterday, January 12, 2010, in which you reviewed the concepts of "beyond a reasonable doubt," "intent," "acting in concert."

(Pet'r's Mem. at 24; Resp't's Mem. of Law in Opp'n to Pet. for Habeas Corpus ("Resp't's Mem.") at 5.)[8] In response to the note, the trial court (1) advised the jury that

---

[8] The jury's note was not provided to this Court as part of the record. However, given a review of the record, as well as identical quotations of the note made by both parties, the Court considers the parties' quotations of the note to be accurate.

it would answer its question as best as possible, and (2) explained that it could not provide the jury with a transcript of the court's response from the previous day, but could instead have the court reporter read the court's previous instruction back to the jurors. (*Id.* at 500.) With respect to the first question, the court responded,

> So what I am going to do is try and clear up what I believe you're requesting in your first question. I'm going to do it the best I can.
>
> . . .
>
> The duty of a juror in this case, as in any case, is to determine the facts. You are a fact-finding body. The law says you are the exclusive judges of the facts. On the other hand, and with equal emphasis, I charge you that you are bound to accept the law of the case as I instruct you. After you have determined the questions of fact, apply the law as charged by me and render a verdict based on the facts as you have decided them and under the law as charged by the court.

(*Id.* at 500-01.) The court then repeated its charge regarding intent, and portions of the previous day's instructions, including the instruction on reasonable doubt, were re-read to the jury. (*Id.* at 502.)

### 1. State Procedural Bar

### a. Applicable Law

The procedural bar rule in the review of applications for writs of habeas corpus is based on the "comity and respect that must be accorded to state-court judgments." *House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims may be

procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). This rule is "grounded in concerns of comity and federalism" – protecting a state's right to enforce its laws and to maintain its judicial procedures as it sees fit. *Id*. at 730-31.

Once it is determined that a claim is procedurally barred under state procedural rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id*. at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

b. Analysis

Petitioner's claim that the trial court's charge regarding reasonable doubt included an incorrect description of the People's burden of proof, and thus deprived him of his right to be convicted on proof beyond a reasonable doubt, is procedurally barred from habeas corpus review because it was decided at the state level on adequate and independent procedural grounds.

As discussed *supra*, petitioner appealed his conviction to the Appellate Division on two grounds, one of which was improper jury response. However, in its decision affirming petitioner's conviction, the Appellate Division declined to review petitioner's jury response claim, stating that it was unpreserved for appellate review under N.Y. C.P.L. § 470.05(2). *People v. Dell'Aera*, 84 A.D.3d at 1110. The

Appellate Division's statement that petitioner's claim was "unpreserved" is "sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue." *Figueroa v. Grenier*, No. 02 Civ. 5444 DAB GWG, 2005 WL 249001, at *8 (S.D.N.Y. Feb. 3, 2005).

New York's preservation doctrine – that in order to preserve a particular issue for appeal, a party must specifically alert the trial court to that issue at the time it arises – is firmly established and regularly followed. *See Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007) (explaining that the preservation rule "applies with respect to motions to suppress as it does in every other context"); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review, and further noting that '"federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim"' (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990))).

Furthermore, the Appellate Division's reliance on the preservation doctrine was not exorbitant in this case. As noted above, the Supreme Court has concluded that there are a limited category of "exceptional cases" in which the state appellate court applied a firmly established and regularly followed procedural rule in an "exorbitant" manner, "render[ing] the state ground inadequate to stop consideration of a federal question," and thereby allowing a federal court to review that claim on the merits in a habeas

10

appeal. *Lee v. Kemna*, 534 U.S. 362, 376-77 (2002).[9]

Notwithstanding petitioner's failure to preserve his claim, this Court may still consider the claim on its merits if petitioner can demonstrate "cause and prejudice" for the procedural default, or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, that he is actually innocent of the crimes for which he was convicted. *See Coleman*, 501 U.S. at 748-51; *Murray*, 477 U.S. at 496. Petitioner has failed to demonstrate cause or prejudice for the procedural default. Petitioner makes no argument for why he did not preserve his objection to the trial court's response requesting clarification on the concept of reasonable doubt.[10] To the extent petitioner

---

[9] The Court has considered the factors for "evaluating the state interest in a procedural rule against the circumstances of a particular case" set forth in *Cotto v. Herbert*:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

331 F.3d 217, 240 (2d Cir. 2003) (citing *Lee*, 534 U.S. at 376, 381-85). Having considered these factors in connection with this exception, the Court concludes that the Appellate Division did not apply the preservation doctrine in an exorbitant manner.

[10] Petitioner argues that the claim may still be reviewed because (1) the response was a fundamental error, and under New York law, courts review fundamental constitutional error even in the absence of an objection, and (2) that where a contemporary objection is not required under New York law, the issue is preserved for review on a petition for habeas corpus. (Pet'r's Mem. at 32.) The Court finds neither argument to be meritorious. It is evident from the

is suggesting that the procedural default was a result of ineffective assistance of counsel "[w]here, as here, a petitioner cannot prevail on the merits of his claim[], he cannot overcome a procedural bar by claiming ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC), 2010 WL 5125317, at \*4 (E.D.N.Y. Dec. 9, 2010) (citing *Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) and *Larrea v. Bennett*, 368 F.3d 179, 182 (2d Cir. 2004)).

Nor has petitioner demonstrated that a "fundamental miscarriage of justice" would occur if these claims were not reviewed. To the extent petitioner argues that he is actually innocent of the crimes for which he was convicted, (Pet'r's Reply Mem. at 4), the Court rejects this argument and finds that, as discussed *supra*, overwhelming evidence of guilt was established by the prosecution. Accordingly, petitioner's claim is procedurally barred from review by this Court. In any event, assuming *arguendo* that the claim is reviewable based on cause for default and prejudice resulting therefrom, the claim is substantively without merit, as set forth below.

## 2. Merits

In an abundance of caution, the Court considers petitioner's claim on the merits, and finds that petitioner's claim does not warrant habeas relief. The trial court's instruction regarding the role of the jury was a clear and correct statement of the jury's obligation and a proper response to the juror note. As discussed below, the instruction did not violate due process in any way.

New York Criminal Procedure Law § 310.30 provides that "[a]t any time during

---

Appellate Division's decision that a contemporary objection was required, and that the claim was not one of fundamental error requiring review by the Appellate Division.

its deliberation, the jury may request the court for further instruction or information . . . ." Upon receipt of such a request, the court "must give such requested information or instruction as the court deems proper." N.Y. C.P.L. § 310.30. The court must respond meaningfully to the jury's request for further information or instruction. *People v. Gonzalez*, 56 N.E.2d 574, 576 (N.Y. 1944); *see also Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."). The trial court is, however, "vested with some measure of discretion in framing its response and is in the best position to evaluate the jury's request in the first instance." *People v. Malloy*, 434 N.E.2d 237, 240 (N.Y. 1982). The trial court may, in its discretion, choose to merely reread the original charge read to the jury in response to their question. *See id.* at 237 ("Where, however, after considerable deliberation, the jury requests clarification concerning the meaning of reasonable doubt and the original instruction is adequate, it is not error for the Trial Judge, as he did here, to respond to the request by rereading that instruction.").

This is not to say that a mere re-reading of an original charge will in every case be the appropriate course to follow. "Indeed, if the jury subsequently expresses the need for further instructions, it may well constitute error simply to repeat the charge, for then it may be obvious that the jurors have been left without adequate guidance." *Id.* at 240. Factors to be considered by the Court in determining whether the trial court's response to the jury's inquiry was sufficient include "the form of the jury's question, the particular issue, the substance of the supplemental instruction and the presence or absence of prejudice to defendant." *People v. Cataldo*, 260 A.D.2d 662 (N.Y. App. Div. 1999).

Here, the jury note sought clarification of its duty with regard to the evidence, the role of the jury, and to what extent to exercise independent judgment apart from whether the prosecution met its burden to prove guilt beyond a reasonable doubt. In that context, the trial court's response to the note, which included re-reading the instruction regarding the role of the jury as the exclusive fact-finder (but reminding them of the need to accept the law as charged) was not erroneous, and in any event, certainly not constitutionally defective.[11] In short, the trial court's response accurately stated that the jury's role as fact finder is a "constitutional responsibility . . . not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *United States v. Gaudin*, 515 U.S. 506, 514 (1995).

Although petitioner argues that the instruction suggested that the jury had the right to make factual findings "based upon their speculation, independent of the evidence," (Pet'r's Mem. at 31), that argument is utterly without merit in light of

---

[11] Moreover, the jury did not request further clarification or express any confusion about the trial court's answer to its question. *See People v. Almodovar*, 464 N.E.2d 463, 466 (N.Y.1984) ("The record does not indicate that [the trial court] had misinterpreted the [jury] request or that the jurors were dissatisfied with the instructions given. They did not ask for further instructions on justification and defense counsel did not request it until after the jury retired. Under the circumstances, the court did not err when it refused to go beyond the jury's request."); *Malloy*, 434 N.E.2d at 240 ("In determining the most appropriate way to handle that request, the court took the view that the original charge could be made no clearer and that any attempt to alter it in light of the extensive deliberations already undertaken would only generate confusion. Although the better practice would have been to inquire of the jury what was unclear to them, they gave no indication after the original charge was repeated that their concern had not been satisfied.").

the language of the instruction. The instruction does not, either explicitly or implicitly, invite speculation by the jury or suggest that they can make factual findings independent of the evidence presented. In addition, as petitioner acknowledges, the instruction regarding the jury's role was given in conjunction with a re-reading of the instruction on reasonable doubt. (Pet'r's Mem. at 32.) In fact, the jury was repeatedly told that every element of the crime charged had to be proven beyond a reasonable doubt, and the concept of reasonable doubt was clearly and properly defined. (*See* Tr. 446-49, 454-55, 457, 461-66, 480-82, 483-86, 502.) Moreover, the jury was explicitly told, during the main instruction, not to speculate or consider anything beyond the evidence presented in arriving at their verdict. (*See, e.g.,* Tr. 443 ("It is essential that you base your verdict upon the evidence and the evidence alone, as you have heard it from the mouth of the witnesses and from exhibits or stipulations which were introduced into evidence. You must not under any circumstances, indulge in speculation or guesswork. Nor are to you consider anything outside the evidence. In other words, do not try to be detectives, do not try to conjecture what you would do or what should have been done, or what might have been done or what could have been done."); *Id.* at 448-49 ("In determining whether or not the People have proven the defendant's guilt beyond a reasonable doubt, you should be guided solely by a full and fair evaluation of the evidence. After carefully evaluating the evidence, each of you must decide whether or not the evidence convinces you beyond a reasonable doubt of the defendant's guilt. Whatever your verdict may be, it must not rest on baseless speculations nor may it be influenced in any way by bias, prejudice, sympathy, or by a desire to bring your deliberations to an end or to avoid an unpleasant duty.").)

In sum, the trial court meaningfully responded to the jury's request for clarification regarding their fact finding role, and gave them a legally correct instruction to that effect. As such, there was no constitutional violation committed by the trial court with respect to its response to the juror note, and petitioner's claim with respect to the jury's question is without merit.[12]

Thus, after careful review, the Court concludes that the state court's decision was not an unreasonable application of, nor contrary to, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of all of the evidence presented at trial.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. All of petitioner's claims are plainly without merit.[13] As such, the petition for a

---

[12] Petitioner also argues that the "cumulative effect" of the improper intent instruction and the improper response to the jury note violated his right to due process. (Pet'r's Mem. at 27.) First, as stated *supra*, there were no errors committed by the trial court with respect to the grounds raised by petitioner. In any event, even assuming *arguendo* that there was error committed with respect to both grounds raised by petitioner, such errors did not result in a due process violation because they did not cumulatively deprive petitioner of a fundamentally fair trial. Moreover, although petitioner cites *Gaines v. Kelly*, 202 F.3d 598 (2d Cir. 2000), that case is completely inapposite to the instant petition, as none of the errors in the reasonable doubt instructions given in that case are present here.

[13] In his reply, petitioner makes clear that he is not raising a separate claim that the verdict rendered went against the weight of the evidence. (*See* Pet'r's Reply at 4 ("It is not Mr. Dell-Aera's claim, in this application for habeas corpus relief, that the verdict was against the weight of the evidence; it is his claim that the verdict was a miscarriage of justice.").) In any event, to the extent petitioner raises an implied

writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of any denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly, and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  December 20, 2012
         Central Islip, New York

\* \* \*

Petitioner is represented by Paula Schwartz Frome, Esq., 1325 Franklin Avenue, Suite 225, Garden City, NY 11530. Respondent is represented by Laurie Kathleen Gibbons, Assistant District Attorney, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.

---

weight of the evidence claim, a "weight of the evidence" claim is based on state law. *See Correa v. Duncan,* 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). The Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."). Even if construed as a federal sufficiency of the evidence claim, such claim is unexhausted, and in any event, there is sufficient evidence to sustain the verdict in this case based upon the overwhelming evidence of petitioner's guilt, as discussed *supra*.

14